Francis B. Cooley *et al.*, Appellants, *v.* Reuben D. Jones, *et al.*, Appellees.

### APPEAL FROM THE SUPERIOR COURT OF CHICAGO.

It does not follow because a party has made an assignment of his effects, that he may not at a subsequent period be dealing on his own account, even with those who have had notice of the assignment, and the time when he may properly do so, will depend upon circumstances.

This was a suit in chancery, commenced by Theodore Betts, John D. Mellen, Alfred A. K. Sawyer and John O. Mellen, com-

posing the firm of Sawyer, Mellen & Co., filed in the Cook County Court of Common Pleas, on the chancery side thereof, against Cooley, Farwell & Co., and the said R. D. Jones & Sons and George W. Ashard, for leave to pay into court a sum of money due upon two drafts, made by A. N. Littig, payable to the order of George W. Ashard, and accepted by complainants, (Sawyer, Mellen & Co.,) and then by them delivered to Ashard, and then by him assigned to R. D. Jones & Sons, which drafts were drawn against a debt then due and payable by said Littig to Cooley, Farwell & Co. And said complainants having been notified by Cooley, Farwell & Co., that those drafts were theirs, and that they must pay the moneys due thereon to them; complainants, therefore, prayed that said R. D. Jones & Sons, and Cooley, Farwell & Co., who respectively claimed such moneys, might interplead and settle their rights to the same.

The bill sets forth that on or about the 29th of October, 1857, Sawyer, Mellen & Co., accepted two drafts of that date, drawn on them by A. N. Littig; one payable to George W. Ashard, ten days from date, in the sum of $200, and the other payable to said George W. Ashard, in twenty days after date, in the sum of $100, and that when they were so accepted, they delivered them to said Ashard.

That afterwards, Ashard indorsed both drafts to R. D. Jones & Sons.

That either on the day they accepted the drafts or the day following, Cooley, Farwell & Co. informed complainants, that said drafts had been given to Ashard by Littig, in payment for flour sacks, which Littig was then owing Cooley, Farwell & Co.; that a part of said sacks had been sold to said Littig by Ashard, and that Ashard had sold and assigned such account to Cooley, Farwell & Co., and that the remainder of said sacks had been sold directly by said Cooley, Farwell & Co. to said Littig, and that Cooley, Farwell & Co. claimed the drafts which complainants had so accepted, and that said R. D. Jones & Sons knew at the time they received said drafts from Ashard, that they and the amount for which they were given in payment, belonged to Cooley, Farwell & Co.; that Ashard was only their agent or factor; and insisted and gave notice to complainants, that complainants would be held liable to them, if they paid the said drafts to Ashard's order.

That R. D. Jones & Sons had commenced an action at law against complainants in the Cook County Court of Common Pleas, to recover the money due on said drafts.

That complainants are willing to pay to any person or persons who are lawfully entitled to receive it, the amount due on said drafts, and offer to pay the same into court.

They prayed that said defendants may interplead and settle their rights to the money due on said drafts, and that complainants may pay the same into court, and that R. D. Jones & Sons may be enjoined from proceeding in their said suit at law against complainants, and that Cooley, Farwell & Co. may be restrained from commencing any suit against them touching the premises, and that George W. Ashard may be made a party to the bill and answer the same without oath, and that complainants, upon payment of such amount into court, and procuring such interpleading, may be discharged from all liabilities to such defendants in the premises.

On 2nd February, 1860, Cooley, Farwell & Co. filed their joint and several answers. They admit that on or about the 29th of October, 1857, complainants accepted said drafts of said Littig of that date; that one was for $100, and was payable to the order of George W. Ashard, twenty days after date; that the other was for $200, payable to the order of said Ashard, ten days after date; and that said complainants, after accepting them, delivered them to said Ashard.

Cooley, Farwell & Co. further say, that Littig had previously bought of Ashard, a certain bill of flour sacks; that they were bought on credit; that afterwards, on 10th October, 1857, Ashard, by an instrument in writing of that date, for a consideration therein named, sold and conveyed to Cooley, Farwell & Co. the said claim against Littig, with other claims against other persons, which they have to produce.

That after the said purchase of Ashard by Cooley, Farwell & Co., of the aforesaid claim against Littig, Cooley, Farwell & Co. sold to Littig a bill of flour sacks, which said two bills of sacks were the sole consideration for said two drafts, and that they were drawn by Littig, and delivered to Ashard in payment of the balance due Cooley, Farwell & Co. upon said sacks, and that Ashard received them solely as agent of Cooley, Farwell & Co., and that Ashard had no right or authority to negotiate the same, or assign them to any one except Cooley, Farwell & Co.

That on or about the 10th October, 1857, Ashard entered into the employ of Cooley, Farwell & Co., and so continued until after the acceptance of said drafts; that the agency of Ashard was limited, and conferred no authority upon him to assign any draft which he should receive in payment of amounts held by Cooley, Farwell & Co. against Littig or others, and that they never authorized Ashard to indorse said drafts, or either of them, in any manner.

They admit that Ashard assigned said drafts to R. D. Jones & Sons, and are informed and believe that part consideration therefor was a pre-existing debt due from Ashard to Jones &

Sons—they agreeing to return the balance to Ashard after paying their debt.

They say at the time of such assignment of said drafts, and long before that time, Jones & Sons were fully aware that Ashard had sold and assigned all his claims against Littig to Cooley, Farwell & Co., and that Jones & Sons knew that said drafts and the considerations thereof, were the property of Cooley, Farwell & Co., and they aver that the assignment of said drafts were in fraud of the rights of Cooley, Farwell & Co., and conveyed no title to R. D. Jones & Sons.

Admit that they informed complainants of their claim to the said two drafts, and to the consideration thereof, and likewise of the fraud of Ashard in assigning them, and that complainants would be held liable to them for the amount of the drafts.

Admit, on information and belief, that R. D. Jones & Sons had commenced a suit for the money upon said drafts, and pray that the fund brought into court by complainants may be awarded to them, Cooley, Farwell & Co.

R. D. Jones & Sons by their answer admit that on or about the 29th October, 1857, complainants accepted the said two drafts, and that they were payable to said George W. Ashard, as stated in bill, and that Ashard assigned them to R. D. Jones & Sons. That such assignment was on the 30th October, 1857. That Ashard called at their store to purchase sheetings and shirtings to make into flour sacks for A. N. Littig, whom he represented to be a merchant in Iowa, and then exhibited the said drafts, accepted by complainants, and requested R. D. Jones & Sons to receive them in payment for purchases he might make. Whereupon R. D. Jones informed Ashard that he knew nothing of said drafts, and was unacquainted with the responsibility of the acceptors. Before consummating any sale, R. D. Jones made such inquiries, and finding the complainants responsible, made sale to Ashard of two bales of sheeting, amounting in the aggregate to the sum of $318.72, and delivered the same to him, who at the time, in payment therefor, delivered to R. D. Jones the said drafts, and paid the balance of $18.72.

R. D. Jones & Sons say that said drafts were received in good faith for such consideration, and without knowledge that Cooley, Farwell & Co. were the owners thereof, or of the assignment of any account by Ashard to Cooley, Farwell & Co. against said Littig, nor of any sale of stock or property by Cooley, Farwell & Co. to said Littig, or of any indebtedness of Littig to Cooley, Farwell & Co., and therefore neither admit nor deny the same.

And they have no knowledge or information of any sale, assignment or claim, from Ashard to Cooley, Farwell & Co.,

until the first draft became due, at which time complainants said they had been instructed by Cooley, Farwell & Co. not to pay the drafts.

That Ashard was indebted to them at the time; that the sale of goods to Ashard was a cash sale, without reference to his indebtedness to them to a large amount; and say that Ashard was then manufacturing flour sacks on his own account; and they insist that they received said drafts before maturity, in good faith and for a valuable consideration, and that Ashard had a right to dispose of the same.

Admit they commenced suit against complainants for the money on said drafts, and state from information, that they recovered judgment upon the drafts before the filing of the said bill.

There was a decree in favor of appellees, whereupon an appeal was prayed.

C. M. HAWLEY, for Appellants.

WAITE & TOWNE, and C. C. BONNEY, for Appellees.

WALKER, J.  There is no evidence in this record that Jones & Sons had any notice that the account against which these drafts were drawn had been assigned by Littig, on the 10th day of October, to Cooley, Farwell & Co.  But it is insisted that they had constructive notice, or at least such notice as should have put them upon inquiry, as they knew when they received the drafts that Littig had, on the tenth day of that month, made an assignment to Cooley, Farwell & Co.  It appears that Jones & Sons purchased the drafts and paid their full value, and unless they are thus chargeable with notice, they must be regarded as both the legal and equitable owners.  Conceding that Jones & Sons had notice that the assignment had been made to Cooley, Farwell & Co., on the tenth of the month, it does not follow, that because they find him with credit on which he may draw drafts, nineteen days afterwards, that they must know that it was on account of a claim previously assigned.  There must come a time, after a man has made an assignment of this character, when the world may trade with him without being chargeable with notice, or put upon inquiry, to ascertain whether he is trading with property of the assignee.  How long that shall be, may depend upon circumstances.  The amount of the transaction, the length of time which has elapsed, the character and business habits of the party who has made the assignment, may all be taken into consideration.  We think, in this case, considering the amount of the drafts, in connection with his former business, and the length of time which had elapsed, that there

was nothing to put defendants in error upon inquiry, or to charge them with notice.

The decree of the court below must be affirmed.

*Decree affirmed.*